

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

**CANDACE LEE TANNER,**
Plaintiff,

v.

**CHEYENNE HOUSING AUTHORITY;**
**PERSHING POINTE PRESERVATION LIMITED PARTNERSHIP;**
**PERSHING POINTE PRESERVATION GP LLC;**
**SELDIN COMPANY, LLC;**
**MENDEE COTTON, in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing Pointe;**
**JANELLE BALFOUR, in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing Pointe II;**
and **JOHN AND JANE DOES 1–10,**
Defendants.

Case No. ___26-CV-171-KHR___
Assigned by Clerk

# VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

# JURY TRIAL DEMANDED

Plaintiff Candace Lee Tanner, appearing **pro se**, brings this Verified Complaint against the above-named Defendants and alleges as follows:

# I. INTRODUCTION

1. This is a civil rights, fair housing, disability discrimination, retaliation, federally assisted housing, and landlord-tenant action arising under the Fair Housing Act, 42 U.S.C. §§ 3601 et seq.; 42 U.S.C. § 1983; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act; and related Wyoming law, including the Wyoming Residential Rental Property Act, Wyo. Stat. §§ 1-21-1201 et seq.

2. Plaintiff alleges that Defendants interfered with her housing stability, unlawfully terminated or contributed to the loss of housing assistance, failed to provide required process, failed to reasonably accommodate disability-related needs, retaliated against her for protected fair-housing activity, selectively enforced lease and community rules against her, tolerated comparable or more serious conduct by other tenants, failed to address documented habitability and safety conditions, and contributed to Plaintiff's forced relocation under duress in May 2026.

3. Plaintiff was a long-term Housing Choice Voucher participant through the Cheyenne Housing Authority until her assistance was terminated in or around October 2025. Plaintiff disputes that termination as unlawful, procedurally defective, discriminatory, retaliatory, and contrary to federal housing requirements.

4. Plaintiff seeks declaratory relief, temporary and preliminary injunctive relief, permanent injunctive relief, restoration or reinstatement of housing assistance, compensatory damages, punitive damages where permitted by law, costs, statutory fees where available, and all further relief the Court finds just and proper.

5. Plaintiff also seeks emergency relief restraining Defendants from filing, pursuing, supporting, or relying upon eviction action based on the May 8, 2026 Wyoming Twenty-Day Notice to Vacate, which Plaintiff alleges was vague, unsupported, retaliatory, selectively enforced, and legally defective.

---

# II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because the state-law claims arise from the same events, transactions, housing relationship, and alleged course of conduct as the federal claims.

8. Venue is proper in the District of Wyoming under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Laramie County, Wyoming, and Defendants reside, operate, administer programs, or conduct business in this District.

## III. PARTIES

9. Plaintiff Candace Lee Tanner is an adult resident of Cheyenne, Laramie County, Wyoming. Plaintiff resides or resided at 1931 Rainbow Road, Unit #102, Cheyenne, Wyoming 82001-8529. Plaintiff is a single mother of a minor child, age 17, and is Hispanic.

10. Plaintiff was a long-term participant in the federal Housing Choice Voucher program administered by Defendant Cheyenne Housing Authority for approximately nine years. CHA terminated Plaintiff's housing assistance in or around October 2025. Plaintiff disputes that termination as unlawful, procedurally defective, discriminatory, retaliatory, and contrary to federal housing requirements. Plaintiff seeks restoration or reinstatement of housing assistance and related relief.

11. Defendant Cheyenne Housing Authority "CHA" is a public housing authority located at 3304 Sheridan Street, Cheyenne, Wyoming. CHA administers federal housing-assistance programs, including the Housing Choice Voucher program. CHA acts under color of state law for purposes of 42 U.S.C. § 1983 and is a public entity for purposes of Title II of the ADA.

12. Defendant Pershing Pointe Preservation Limited Partnership is alleged to be an owner or ownership entity for Pershing Pointe Townhomes and/or Pershing Pointe II, located at or near 1900 Rainbow Road, Cheyenne, Wyoming 82001. Plaintiff alleges the property is connected to affordable housing and federally assisted housing requirements, including Low Income Housing Tax Credit obligations and good-cause protections.

13. Defendant Pershing Pointe Preservation GP LLC is alleged to be the general partner or related controlling entity of Pershing Pointe Preservation Limited Partnership. Its principal office is believed to be located at 401 Wilshire Boulevard, 11th Floor, Santa Monica, California 90401, attention Russell Condas, General Partner, subject to confirmation through public records and discovery.

14. Defendant Seldin Company, LLC is the property-management company that manages, operates, and enforces lease and community rules at Pershing Pointe Townhomes/Pershing Pointe II as agent for the owner. Its corporate office is located at 2840 South 123rd Court, Omaha, Nebraska 68144.

15. Defendant Mendee Cotton is sued in her individual capacity and in her capacity as property manager and/or agent for Seldin Company, LLC and Pershing Pointe. Plaintiff alleges Defendant Cotton personally participated in issuing, communicating, enforcing, or refusing to explain the May 8, 2026 Twenty-Day Notice to Vacate and related adverse housing actions.

16. Defendant Janelle Balfour is sued in her individual capacity and in her capacity as property manager and/or agent for Seldin Company, LLC and Pershing Pointe II. Plaintiff

alleges Defendant Balfour personally participated in lease enforcement, tenant-file activity, notices, complaints, management actions, and adverse housing actions against Plaintiff.

17. Defendants John and Jane Does 1–10 are unknown persons, employees, contractors, agents, representatives, decision-makers, or entities whose identities are not yet fully known. Plaintiff will seek leave to amend when their identities become known.

# IV. EXHAUSTION, NOTICE, AND RELATED PROCEEDINGS

18. Plaintiff has participated in and continues to pursue housing-related administrative processes before the U.S. Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity, Region VIII, including HUD FHEO Inquiry No. 873217, assigned to Equal Opportunity Specialist Johnnie L. Harvey Jr.

19. Plaintiff has made repeated written complaints, repair requests, reasonable-accommodation requests, preservation-of-evidence requests, and requests for written explanations to property management, CHA, HUD, Code Enforcement, and other agencies.

20. Plaintiff has also filed or prepared a Section 804(b) housing-discrimination complaint with HUD alleging national-origin discrimination and disparate enforcement connected to parking enforcement, including the February 26, 2026 parking/tow-warning incident involving Plaintiff's daughter's vehicle.

21. Plaintiff previously filed Civil Action No. 2025-CV-0203882 in the First Judicial District Court of Laramie County, Wyoming. That matter was dismissed without prejudice on May 13, 2026 under W.R.C.P. 4(w) for failure to obtain timely service of summons. Plaintiff now brings this action in federal court to assert federal civil rights, fair housing, disability, retaliation, and related claims and to seek emergency injunctive relief.

# V. FACTUAL ALLEGATIONS

## A. Tenancy, Housing Assistance Termination, and Protected Activity

22. Plaintiff resided at Pershing Pointe Townhomes/Pershing Pointe II and relied on housing assistance administered by CHA for approximately nine years before CHA terminated that assistance in or around October 2025.

23. Plaintiff disputes CHA's termination of her housing assistance and alleges the termination deprived her of housing stability, increased her risk of eviction and displacement, and contributed to the emergency circumstances described in this Complaint.

24. Plaintiff has engaged in protected activity by requesting reasonable accommodation, disputing adverse housing actions, reporting habitability issues, reporting safety and harassment concerns, filing and pursuing HUD/FHEO matters, requesting repair and enforcement action, requesting preservation of evidence, and filing prior legal action.

25. Plaintiff repeatedly requested written explanations, records, repair action, reasonable accommodation, equal enforcement, tenant-file correction, and preservation of evidence.

26. Plaintiff alleges that after engaging in protected activity, Defendants escalated adverse actions, including lease violations, parking/tow warnings, animal-control-related enforcement, police involvement, trespass warnings, refusal to clarify access rights, and the May 8, 2026 Twenty-Day Notice to Vacate.

## B. Habitability, Repairs, and Unsafe Living Conditions

27. Plaintiff reported conditions including rodent infestation, possible mold and moisture issues, sink leaks, water damage, dishwasher flooding, dryer-vent and dryer-electrical issues, defective windows and ventilation, toilet and sanitation concerns, unknown chemical spraying, rodenticide or bait-station concerns, and contractor/maintenance access issues.

28. Plaintiff alleges that management failed to timely and adequately remedy these conditions despite repeated written notice.

29. On or about May 8, 2026, contemporaneously with the Twenty-Day Notice to Vacate, Plaintiff again observed a live mouse in the unit.

30. Plaintiff alleges that these conditions caused or contributed to health, safety, financial, property, emotional-distress, business-disruption, and relocation-related damages to Plaintiff, her minor child, and her dog Cortez.

31. Plaintiff further alleges that unknown chemical spraying, bait-station placement, rodent infestation, and security concerns contributed to fear for her dog's safety and to veterinary expenses, including an approximately $400 veterinary bill.

## C. Entry, Cameras, Property Damage, Security, and Police Contacts

32. Plaintiff repeatedly reported cameras going offline or being unplugged, alleged unauthorized access, missing or stolen property, backyard and greenhouse damage, and reasonable fear that unknown persons had accessed her home or backyard.

33. Plaintiff alleges that her cameras were physically unplugged or disabled, preventing documentation of incidents.

34. Plaintiff alleges that her home was accessed without authorization and that items were stolen, moved, or disturbed.

35. Plaintiff alleges that management failed to provide meaningful safety planning, lock/key review, access-log review, maintenance-entry review, contractor-access review, preservation response, or corrective action after notice.

36. On or about May 9, 2026, Plaintiff documented a police interaction involving Cheyenne Police Officer LaPorta, badge P69, believed to be related to Cheyenne Police Department Incident No. 26-25237. Plaintiff alleges the officer entered her home or remained at her threshold after she asked him to leave, obstructed her ability to close her door, and threatened her with citation if she closed the door. Plaintiff alleges she was afraid and called 911 while the officer was still present.

37. On or about May 14 to May 15, 2026, Plaintiff returned to her home and discovered evidence that the home had been accessed without authorization and that items had been stolen, moved, or disturbed.

38. Plaintiff alleges that these events caused her to fear sleeping in her home, leaving her daughter in the home, leaving her dog in the home, and leaving the home unattended.

39. On May 22, 2026, at approximately 1:33 PM, Cheyenne Police Department officers responded to the property in connection with a trespass-related complaint by a neighboring resident. The incident was documented under Cheyenne Police Department Incident No. 26-27660.

40. During the May 22, 2026 incident, Plaintiff was provided a business card identifying "Officer Taraski, P87," while Plaintiff's own photographs and video stills appear to show officers with uniform nameplates reading "Federer" and "Fakler." Plaintiff also documented that an officer identified as P98 was present.

41. Plaintiff has submitted a written public-records request to the Cheyenne Police Department requesting body-worn camera footage, dash-camera footage, CAD/dispatch logs, officer identification, incident reports, attempted citation records, and all related documentation.

## D. Neighbor Conduct, Common-Area Access, and Selective Enforcement

42. Plaintiff repeatedly reported conduct involving Units 3-101, 3-103, and 3-104, including blocked or narrowed rear gravel/common passage areas, parking violations, loose animals, dog trespass into Plaintiff's yard, animal-waste concerns, sanitation concerns, harassment, profanity, property interference, possible unauthorized occupants, possible accessible-parking placard misuse, and other lease/community-rule violations.

43. Plaintiff alleges that Unit 3-103's dog entered Plaintiff's private yard on multiple occasions, and that Plaintiff reported these incidents before management and enforcement agencies later escalated animal-related enforcement against Plaintiff.

44. Plaintiff alleges that Unit 3-103 repeatedly called police on her, including for alleged trespass in a rear area that Plaintiff understood to be common or authorized access.

45. Plaintiff alleges that she was threatened with, and then issued or nearly issued, a trespass citation in connection with use of a rear gravel/common access route for trash disposal, retrieving items, documenting her dryer vent, or moving belongings.

46. Plaintiff alleges that the rear gravel/common passageway she was authorized to use was blocked or narrowed by neighboring tenants' belongings, forcing Plaintiff either to step onto nearby concrete or be unable to access trash and move-out routes safely.

47. Plaintiff asked management to put in writing that Plaintiff was authorized to use the common or rear gravel access route. Plaintiff alleges management refused to provide written clarification.

48. Plaintiff alleges Defendant Cotton stated in substance that there was no point in providing written clarification because Plaintiff would be gone the following week.

49. Plaintiff alleges management's refusal to clarify common-area access in writing, while police and neighbors were accusing Plaintiff of trespass, contributed to harassment, intimidation, forced relocation, and constructive eviction.

50. Plaintiff also reported that persons associated with Unit 3-103 screamed at her, cursed at her, called her a profane epithet, and harassed Plaintiff and her daughter.

51. Plaintiff reported that persons associated with Unit 3-103 left food or paper plates near or under Plaintiff's tires, damaged or interfered with Plaintiff's property, and continued to use police calls against Plaintiff.

52. Plaintiff reported marijuana odor associated with Unit 3-103 despite lease provisions relating to marijuana, drugs, and smoke-related conduct.

53. Plaintiff alleges management failed to take meaningful action after receiving these reports.

54. Plaintiff documented concerns involving Unit 3-104, including multiple vehicles, a white/black vehicle allegedly remaining parked for extended periods while partially blocking or obstructing a sidewalk/common walkway, and possible accessible-parking placard misuse.

55. Plaintiff alleges a person associated with Unit 3-104 verbally told Plaintiff that she allowed her non-disabled daughter to use her accessible/handicap parking placard so the daughter would have a safe parking space.

56. As early as November 24, 2024, and continuing through December 2024, Plaintiff submitted Pershing Pointe Information Forms regarding Unit 3-104's use of multiple parking spaces and an incident Plaintiff described as harassment involving Plaintiff's teenage daughter.

57. Plaintiff alleges management enforced parking rules, animal rules, patio/common-area rules, obstruction rules, and lease provisions against Plaintiff and her daughter while failing to enforce comparable or more serious conduct by neighboring tenants.

58. On February 26, 2026, Defendants placed parking/tow-warning stickers on Plaintiff's minor daughter's vehicle in an area Plaintiff alleges lacked posted signs, painted curb

markings, or clear written notice. Plaintiff alleges similarly situated non-Hispanic tenants were not subjected to comparable enforcement.

59. Plaintiff alleges the February 26, 2026 parking enforcement forms part of her HUD Section 804(b) national-origin discrimination complaint.

## E. Disputed Lease Violations and May 8, 2026 Twenty-Day Notice to Vacate

60. On or about April 24, 2026, Seldin Company, LLC and Pershing Pointe issued a lease-violation notice alleging an unapproved fence, modification, backyard obstruction, or fire-hazard issue.

61. Plaintiff disputes the April 24, 2026 notice and alleges comparable or more serious neighboring backyard, patio, common-area, fire-safety, and obstruction conditions were tolerated without similar enforcement.

62. On or about April 27, 2026, Plaintiff alleges management and/or maintenance removed or dismantled Plaintiff's retractable privacy fence/barrier with a drill, without Plaintiff's consent and while Plaintiff disputed the underlying violation.

63. Plaintiff alleges this removal damaged, interfered with, or deprived Plaintiff of personal property and privacy/security measures.

64. On May 8, 2026, Seldin Company, LLC, through Defendant Cotton, issued a Wyoming Twenty-Day Notice to Vacate.

65. The May 8, 2026 Notice did not identify any specific alleged incident, date, lease provision, witness, evidence, or factual basis.

66. The verification or proof-of-service portion of the May 8, 2026 Notice was unsigned or otherwise incomplete.

67. When Plaintiff asked Defendant Cotton in person what incident the Notice was based on, Defendant Cotton stated that she could not discuss the incident with Plaintiff.

68. Defendant Cotton further stated in substance that Wyoming law required only "one lease violation" to evict a tenant.

69. Plaintiff alleges that the April 24 and May 8, 2026 notices were retaliatory, selectively enforced, unsupported by competent evidence, pretextual, vague, and legally defective.

70. Plaintiff further alleges the May 8, 2026 Notice violates or conflicts with affordable-housing good-cause protections because it fails to specify the grounds for termination.

## F. Management Conduct, Retaliation, and Forced Relocation

71. Plaintiff alleges she has been screamed at, threatened, dismissed, or intimidated by management representatives including Defendant Cotton, a prior manager identified as Stephanie, last name unknown, and Defendant Balfour.

72. Plaintiff alleges that since Defendant Balfour entered the management role, lease violations, eviction notices, and adverse notices against Plaintiff escalated.

73. Plaintiff alleges these notices were not issued as neutral enforcement of objective lease standards but as part of a pattern of retaliation, selective enforcement, intimidation, and pressure to vacate.

74. On May 2, 2026, Animal Control issued citations against Plaintiff alleging dog-at-large and dog-feces concerns, despite Plaintiff's prior reports of other tenants' unrestrained animals, dog trespass, and animal-related violations.

75. On May 11, 2026, a criminal trespass warning was issued barring Plaintiff from entering Unit 3-103 premises for eighteen months. Plaintiff declined to sign and disputes the factual and legal basis for the warning.

76. Plaintiff alleges the trespass warning was part of an escalating pattern following her protected complaints about Unit 3-103.

77. On or about May 14 to May 15, 2026, Plaintiff's home was accessed without authorization and items were stolen, damaged, moved, or disturbed.

78. On or about May 15 and May 20, 2026, Plaintiff began relocating belongings under duress, with help from family from out of town.

79. Plaintiff alleges she relocated or began relocating because she no longer felt safe in the home, feared for her life, her daughter's safety, and her dog's safety, and believed management had failed to take meaningful action to protect her household.

80. Plaintiff alleges these facts support constructive eviction, forced displacement, moving costs, storage costs, business-disruption damages, property damages, medical/veterinary expenses, emotional-distress damages, and related relief.

81. Plaintiff alleges Defendants' conduct contradicted lease provisions, fair-housing duties, safety obligations, quiet-enjoyment obligations, VAWA-related protections, and anti-retaliation protections.

---

# VI. CLAIMS FOR RELIEF

**Count I**

**42 U.S.C. § 1983 / Procedural Due Process Against Cheyenne Housing Authority**

82. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

83. CHA, acting under color of state law, deprived or interfered with Plaintiff's protected interests in housing assistance, fair administrative process, reasonable accommodation, and related housing stability without adequate notice, process, accommodation, or fair procedure, in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

**Count II**

**Fair Housing Act Disability Discrimination / Failure to Accommodate, 42 U.S.C. § 3604(f)**

84. Plaintiff incorporates all prior paragraphs as if fully set forth herein.
85. Defendants knew or should have known Plaintiff had disability-related needs and had requested accommodation or disability-related consideration.
86. Defendants failed to reasonably accommodate Plaintiff and failed to engage in the interactive process before escalating adverse housing action.
87. Defendants' conduct violated 42 U.S.C. § 3604(f).

## Count III

**Fair Housing Act Retaliation and Interference, 42 U.S.C. § 3617**

88. Plaintiff incorporates all prior paragraphs as if fully set forth herein.
89. Plaintiff engaged in protected fair-housing activity, including requesting accommodation, reporting discrimination, reporting unsafe housing conditions, filing HUD/FHEO matters, preserving evidence, and pursuing legal remedies.
90. Defendants took adverse actions against Plaintiff after protected activity, including lease violations, parking/tow enforcement, animal-control escalation, trespass-related complaints or enforcement, refusal to clarify access, the May 8, 2026 Twenty-Day Notice, and eviction pressure.
91. Defendants' conduct constituted retaliation, intimidation, coercion, threats, and interference in violation of 42 U.S.C. § 3617.

## Count IV

**Fair Housing Act National-Origin Discrimination, 42 U.S.C. § 3604(b)**

92. Plaintiff incorporates all prior paragraphs as if fully set forth herein.
93. Plaintiff is Hispanic.
94. Defendants discriminated against Plaintiff and her household in the terms, conditions, privileges, services, and facilities of housing because of national origin, including but not limited to disparate parking enforcement culminating on February 26, 2026.
95. Defendants' conduct violated 42 U.S.C. § 3604(b).

## Count V

**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**

96. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

97. To the extent Defendants receive federal financial assistance or administer federally assisted housing, Defendants discriminated against Plaintiff on the basis of disability, failed to reasonably accommodate Plaintiff, and denied Plaintiff equal participation in federally assisted housing.

98. Defendants' conduct violated Section 504 of the Rehabilitation Act.

## Count VI

### Title II of the Americans with Disabilities Act Against CHA

99. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

100. CHA is a public entity.

101. CHA discriminated against Plaintiff on the basis of disability, failed to make reasonable modifications, and denied Plaintiff equal access to or participation in the Housing Choice Voucher program and related administrative processes.

102. CHA's conduct violated Title II of the ADA.

## Count VII

### Wyoming Residential Rental Property Act / Habitability

103. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

104. The property-side Defendants failed to maintain the premises and common areas in a safe, sanitary, and habitable condition and failed to make reasonable repairs after notice.

105. The property-side Defendants violated the Wyoming Residential Rental Property Act, including Wyo. Stat. §§ 1-21-1202 and 1-21-1203.

## Count VIII

### Breach of Quiet Enjoyment, Constructive Eviction, and Negligence

106. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

107. The property-side Defendants' acts and omissions substantially interfered with Plaintiff's safe use and enjoyment of the premises.

108. The property-side Defendants failed to enforce their own lease and community rules uniformly after notice of foreseeable harm.

109. Plaintiff was forced to relocate or begin relocating under duress.

110. Defendants' conduct constitutes breach of quiet enjoyment, constructive eviction, negligence, and related Wyoming common-law violations.

## Count IX

**Declaratory and Injunctive Relief, 28 U.S.C. §§ 2201–2202**

111.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

112.    An actual controversy exists regarding Plaintiff's rights and Defendants' duties under federal and state law.

113.    Plaintiff seeks declaratory and injunctive relief to prevent retaliation, improper eviction, adverse housing-assistance action, destruction of evidence, further interference with tenancy rights, and continued use of the May 8, 2026 Twenty-Day Notice.

---

# VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

a. Declaratory judgment that Defendants violated Plaintiff's rights under the Fair Housing Act, 42 U.S.C. § 1983, Section 504, Title II of the ADA, and Wyoming law;

b. Temporary, preliminary, and permanent injunctive relief restraining Defendants from filing, pursuing, supporting, or relying upon eviction action based on the May 8, 2026 Twenty-Day Notice to Vacate;

c. Injunctive relief restraining further retaliation, intimidation, coercion, selective enforcement, interference, harassment, or adverse housing action;

d. An order requiring Defendants to engage in the reasonable-accommodation process;

e. An order requiring CHA to provide fair process, reasonable accommodation, and restoration or reinstatement of housing assistance, if supported by the evidence and law;

f. An order requiring preservation of records and evidence, including tenant files, maintenance records, access logs, key/lock records, enforcement records, parking records, animal complaints, police/Animal Control communications, complaint records, internal communications, surveillance footage, and records relating to comparator units;

g. Compensatory damages, including housing-related damages, moving costs, storage costs, property damage, medical expenses, veterinary expenses, business disruption, emotional distress, and other actual damages in amounts to be proven;

h. Punitive damages where permitted by law against Defendants for whom punitive damages are legally available;

i. Return of any security deposit and refundable amounts;

j. Costs and statutory fees where permitted by law, including under 42 U.S.C. §§ 1988 and 3613(c);

k. Such further relief as the Court finds just and proper.

# VIII. JURY DEMAND

114.    Plaintiff demands trial by jury on all issues triable by jury under Federal Rule of Civil Procedure 38.

# IX. VERIFICATION

I, Candace Lee Tanner, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing factual allegations are true and correct to the best of my knowledge, information, and belief. Where statements are made on information and belief, I believe them to be true.

Executed this 27th day of May, 2026, at Cheyenne, Laramie County, Wyoming.

**Candace Lee Tanner**
Plaintiff, Pro Se

Respectfully submitted,

**Candace Lee Tanner**
Plaintiff, Pro Se
1931 Rainbow Road, Unit #102
Cheyenne, Wyoming 82001-8529

**Tanner v. Cheyenne Housing Authority.**          Verified Complaint
United States District Court for the District of Wyoming



FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2026 MAY 27   PM 2: 57
MARGARET BOTKINS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

CANDACE LEE TANNER,
Plaintiff,

v.

CHEYENNE HOUSING AUTHORITY;
 PERSHING POINTE PRESERVATION LIMITED PARTNERSHIP;
 PERSHING POINTE PRESERVATION GP LLC;
 SELDIN COMPANY, LLC;
 MENDEE COTTON, in her individual capacity and as agent/property manager for Seldin
Company, LLC and Pershing Pointe;
 JANELLE BALFOUR, in her individual capacity and as agent/property manager for
Seldin Company, LLC and Pershing Pointe II;
 and JOHN AND JANE DOES 1–10,
Defendants.

Case No. ___26-CV-171-KHR___
Assigned by Clerk

# VERIFICATION AND DECLARATION UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746

I, Candace Lee Tanner, Plaintiff in the above-captioned action, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Plaintiff in this action, which I am tendering for filing in the United States District Court for the District of Wyoming.
2. I am appearing **pro se**, without an attorney.
3. I have personally reviewed the documents submitted with this filing packet, including the Cover Letter to the Clerk, Verified Complaint, Emergency Motion for Temporary

Restraining Order and Preliminary Injunction, Declaration in Support of Emergency Motion, Proposed Order, Certificate of Service, Civil Cover Sheet, Application to Proceed Without Prepaying Fees or Costs, and proposed summons forms.

4. The factual statements contained in the Verified Complaint, Emergency Motion, Declaration, Certificate of Service, and related filing materials are true and correct to the best of my knowledge, information, and belief.

5. Where any statement is made on information and belief, I believe that statement to be true based on my personal knowledge, records, communications, photographs, videos, notices, emails, public-records requests, agency communications, and other documentation available to me.

6. I understand that this Declaration is made under penalty of perjury and has the same force and effect as a sworn statement.

7. I have prepared these filings to the best of my ability as a pro se litigant and have attempted to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court as I understand them.

8. Because I am proceeding without counsel, I respectfully request that the Court liberally construe my filings consistent with my pro se status, while considering the emergency housing, safety, fair-housing, disability, retaliation, and due-process issues raised in the filing packet.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of May, 2026, at Cheyenne, Laramie County, Wyoming.

---

**Candace Lee Tanner**
Plaintiff, Pro Se
1931 Rainbow Road, Unit #102
Cheyenne, Wyoming 82001-8529

---

**Tanner v. Cheyenne Housing Authority**
Verification and Declaration Under Penalty of Perjury
United States District Court for the District of Wyoming



# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

CANDACE LEE TANNER,
Plaintiff,

v.

CHEYENNE HOUSING AUTHORITY;
PERSHING POINTE PRESERVATION LIMITED PARTNERSHIP;
PERSHING POINTE PRESERVATION GP LLC;
SELDIN COMPANY, LLC;
MENDEE COTTON, in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing Pointe;
JANELLE BALFOUR, in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing Pointe II;
and JOHN AND JANE DOES 1–10,
Defendants.

Case No. __26-CV-171-KHR__
Assigned by Clerk

# CERTIFICATE OF SERVICE / CERTIFICATE OF PRE-SERVICE NOTICE

I, Candace Lee Tanner, Plaintiff appearing **pro se**, certify as follows:

1. I am submitting this Certificate to document the pre-service notice, courtesy copies, mailing, and/or hand delivery of Plaintiff's emergency filing packet.
2. I understand that formal service of process under Federal Rule of Civil Procedure 4 is not complete until the Clerk issues summonses and the Summons and Complaint are served in a manner authorized by the Federal Rules of Civil Procedure.

3. If the Court grants my Application to Proceed in District Court Without Prepaying Fees or Costs, I respectfully request service by the United States Marshals Service as permitted by law.

4. If service by the United States Marshals Service is not ordered or is not available, I will arrange formal service after summonses are issued by the Clerk, through a process server or other lawful method.

5. This Certificate is intended to document notice and courtesy copies only unless and until formal service is completed under Rule 4.

---

# I. DOCUMENTS PROVIDED OR TO BE PROVIDED

The documents included in Plaintiff's filing packet are:

1. Cover Letter to the Clerk of Court;
2. Verified Complaint, Jury Trial Demanded;
3. Emergency Motion for Temporary Restraining Order and Preliminary Injunction;
4. Declaration of Candace Lee Tanner in Support of Emergency Motion;
5. Proposed Order Granting Temporary Restraining Order and Setting Preliminary Injunction Hearing;
6. Verification and Declaration Under Penalty of Perjury pursuant to 28 U.S.C. § 1746;
7. Certificate of Service / Certificate of Pre-Service Notice;
8. Civil Cover Sheet, Form JS-44;
9. Application to Proceed in District Court Without Prepaying Fees or Costs, Form AO 240;
10. Proposed Summons forms, Form AO 440, for each named Defendant.

---

# II. PRE-SERVICE NOTICE / COURTESY COPIES

On _____, 2026, I caused true and correct notice copies of the above-listed documents, or the emergency filing packet, to be provided as follows:

## Defendant 1 — Cheyenne Housing Authority

c/o Executive Director
3304 Sheridan Street
Cheyenne, Wyoming 82001

Method: U.S. Mail, Certified Mail, Return Receipt Requested
Certified Mail Tracking No.: _____

---

## Defendant 2 — Pershing Pointe Preservation Limited Partnership

1900 Rainbow Road
Cheyenne, Wyoming 82001

Method: U.S. Mail, Certified Mail, Return Receipt Requested
Certified Mail Tracking No.: _____

---

## Defendant 3 — Pershing Pointe Preservation GP LLC

c/o Russell Condas, General Partner
401 Wilshire Boulevard, 11th Floor
Santa Monica, California 90401

Method: U.S. Mail, Certified Mail, Return Receipt Requested
Certified Mail Tracking No.: _____

---

## Defendant 4 — Seldin Company, LLC

c/o Mendee Cotton, Property Manager
Pershing Pointe Townhomes / Pershing Pointe II
1900 Rainbow Road
Cheyenne, Wyoming 82001

Method: Hand Delivery and/or U.S. Mail, Certified Mail, Return Receipt Requested
Certified Mail Tracking No.: _____

---

## Defendant 5 — Mendee Cotton

in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing Pointe
Pershing Pointe Townhomes / Pershing Pointe II

1900 Rainbow Road
Cheyenne, Wyoming 82001

Method: Hand Delivery and/or U.S. Mail, Certified Mail, Return Receipt Requested
Certified Mail Tracking No.: _____

---

**Defendant 6 — Janelle Balfour**

in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing
Pointe II
Pershing Pointe II
1900 Rainbow Road
Cheyenne, Wyoming 82001

Method: Hand Delivery and/or U.S. Mail, Certified Mail, Return Receipt Requested
Certified Mail Tracking No.: _____

---

# III. COURTESY COPY

A courtesy copy was also provided to:

**Heather Wezensky, Section 504 Coordinator**
Seldin Company, LLC
2840 South 123rd Court
Omaha, Nebraska 68144

Method: U.S. Mail, Certified Mail, Return Receipt Requested
Certified Mail Tracking No.: _____

---

# IV. FORMAL SERVICE AFTER SUMMONSES ISSUE

After the Clerk issues summonses, Plaintiff will complete formal service of the Summons and
Complaint on each Defendant as required by Federal Rule of Civil Procedure 4 and any order of
this Court.

Nothing in this Certificate is intended to waive, replace, or misstate the requirements for formal service of process.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 27 day of May , 2026.

Respectfully submitted,

**Candace Lee Tanner**
Plaintiff, Pro Se
1931 Rainbow Road, Unit #102
Cheyenne, Wyoming 82001-8529

---

**Tanner v. Cheyenne Housing Authority**
Certificate of Service / Certificate of Pre-Service Notice
United States District Court for the District of Wyoming

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

CANDACE LEE TANNER,)
Plaintiff,)
)Case No. 26-cv-171-KHR
vs.)
)(Assigned by Clerk)
CHEYENNE HOUSING AUTHORITY;)
PERSHING POINTE PRESERVATION)
LIMITED PARTNERSHIP;)
PERSHING POINTE PRESERVATION GP LLC;)
SELDIN COMPANY, LLC;)
MENDEE COTTON, in her individual capacity)
and as agent/property manager for Seldin)
Company, LLC and Pershing Pointe;)
JANELLE BALFOUR, in her individual capacity)
and as agent/property manager for Seldin)
Company, LLC and Pershing Pointe II; and)
JOHN AND JANE DOES 1–10,)
Defendants.)

---

# MASTER CASE TIMELINE

*Filed in Support of Verified Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction*

Plaintiff Candace Lee Tanner, appearing pro se, submits this Master Case Timeline as supporting documentation to the Verified Complaint and the Declaration in Support of Emergency Motion filed concurrently herewith. The factual statements set forth below are true and correct to the best of Plaintiff's knowledge, information, and belief, and are verified under penalty of perjury pursuant to 28 U.S.C. § 1746 by the accompanying Verification.

This Timeline is organized chronologically in seven parts covering events from August 2024 through May 2026. Each entry identifies the date, factual event, and outcome or status. Cross-references to evidence, exhibits, photographs, certified mail tracking, incident numbers, and witnesses are included where applicable.

## PART 1 — 2024: HCV PROGRAM BACKGROUND AND FIRST TERMINATION PROCEEDINGS

| Date | Event / Description | Outcome / Status |
|------|---------------------|------------------|
| 08/01/2024 | Annual Recertification Paperwork Mailed. CHA mailed Recertification Notice and Packet to Candace Tanner. | **Notice Sent** |
| Aug 2024 | Annual Housing Inspection — Greg Hancock Present. Annual housing inspection conducted at the unit, including CHA Executive Director Greg Hancock. Following inspection, stove was discovered left on — direct safety hazard caused by a CHA official during an official unit inspection. Hancock's contact information was subsequently removed from CHA's publicly listed directory. | **Safety Hazard** |
| 08/22/2024 | Recertification Packet Submitted. Packet submitted with two Profit and Loss statements (June and July 2024) prepared by Kimmy Taylor. | **Submitted** |
| 09/13/2024 | Missing Information Letter Mailed. CHA determined P&L statements did not meet verification requirements. Requested Federal Tax Return, Audited Financial Statement, or Verified Income and Expense Statement. | **Deficiency Notice** |
| 09/24/2024 | Termination Notice Mailed. CHA mailed termination notice for failure to provide required income verification. | **Termination Issued** |
| 09/26/2024 | Safety Concerns Raised regarding Attic/Crawlspace. Building-wide installation safety concerns affecting multiple units. Structural issues documented with photographic evidence. | **Habitability Concern** |
| 10/06/2024 | Informal Hearing Held (First). In-person hearing at CHA. Present: Cynthia Keseru (Hearing Officer), Amanda Allard, Gretchen Peterson, Teresa Chizek, Steve Tanner (advocate), Eva Tanner, Candace Tanner. | **Hearing Held** |
| 10/11/2024 | Hearing Continued / Incomplete Schedule C Submitted. Schedule C submitted but missing second page and not part of filed federal return. Rejected. | **Rejected** |
| 10/24/2024 | Follow-Up Meeting at CHA. Hearing Officer reviewed all submitted documents, explained each rejection reason, provided a sample P&L with certifying language. Deadline extended 15 days to 11/08/2024. | **Extension** |
| 11/04/2024 | Unaudited P&L from CPA Submitted. CPA-prepared P&L stated "no assurance is provided" and omitted substantially all disclosures. CHA emailed same day explaining this does not meet requirements. | **Rejected** |
| 11/07/2024 | 2023 Tax Return with Schedule C Submitted. Complete, signed, and filed 2023 federal tax return including Schedule C. Met program requirements. | **Requirements Met** |
| 11/07/2024 | CRITICAL EVIDENCE — CHA Executive Director Greg Hancock emailed Karmen Rossi (Senator Lummis's office) at 11:55 AM confirming: "This morning she provided a complete and fully signed tax return dated 11/5 that meets the requirement." CHA's own top official, in writing, to a U.S. Senator's office, confirming the tax return satisfied the documentation requirement — the same requirement CHA cited as basis | **Confirmed by Exec. Dir.** |

| | | |
|---|---|---|
| | for termination. | |
| 11/07/2024 | Hearing Decision — Termination OVERTURNED. Hearing Officer overturned CHA's decision. | **Overturned** |

## PART 2 — 2025: UNIT CONDITIONS, HABITABILITY COMPLAINTS, AND SECOND RECERTIFICATION

| Date | Event / Description | Outcome / Status |
|---|---|---|
| 01/13/2025 | Baseline Unit Condition Documented. Photographs taken documenting quiet, safe unit conditions prior to construction work beginning. | **Baseline** |
| 04/28-30/2025 | Habitability and Safety Complaints Filed. Reported defective dishwasher/garbage disposal, drainage failure/flooding, construction debris and roofing nails, electrical hazards. No remediation confirmed. | **Complaint Filed** |
| 04/28/2025 | Unit 3-103 Occupants Destroyed Decorative Fence. Timestamped photographs (IMG_4049, IMG_4051, IMG_4165, IMG_4166) document aftermath of neighbors destroying original decorative fence/screen. Greenhouse frame knocked down, debris and plant material scattered. Neighbor damage forced replacement with the retractable fence later cited as unauthorized. | **Neighbor Damage** |
| May 2025 | Escalation of Unsafe Conditions. Flooding and mold reported; non-functional A/C; unauthorized contractor entries documented; PTSD triggers identified; unsafe wiring photographed. Formal written objection submitted regarding entry without notice. | **Ongoing** |
| 05/15/2025 | Formal Complaint: Unauthorized Entry by Contractors at Unit 3-102. Contractors entered home on or around May 9, May 14, and May 15, 2025 without proper notice or permission. Reported black mold attempted cover-up with plastic instead of remediation. | **Complaint Filed** |
| 05/23/2025 | Dispute of Lease Violation: Alleged Loud/Obnoxious Conduct. Disputed Notice of Lease Violation dated May 23, 2025. Video-recording evidence noted as contradicting claims. Requested specific lease section and supporting documentation. | **Disputed** |
| 05/23/2025 | Dispute of Lease Violation: Backyard Fencing / Alleged Fire Hazard. Disputed Notice of Lease Violation regarding fencing. Stated approval had been obtained from Mendee Cotton verbally though not in writing. Photos with dates attached. | **Disputed** |
| 05/27/2025 | Certified Follow-Up Sent Regarding Prohibited-Conduct Lease Violation. Tracking number on file. | **Mailed Certified** |
| 05/27/2025 | Certified Follow-Up Sent Regarding Fencing / Fire-Hazard Lease Violation. Tracking number on file. | **Mailed Certified** |
| 06/19/2025 | Formal Complaint: Candle Wax Vandalism on Property. Candle wax discovered on planters, storage container, and rug. Photos attached. Requested cleanup, restoration, and preventive measures. | **Complaint Filed** |

| 07/02/2025 | Unit 3-103 Disturbances Documented. Guests entering yard, alleged urination on property, police involvement, witness information from Unit 101/Building 5. Mendec confirmed she would watch for video. | **Documented** |
|---|---|---|
| 07/16-17/2025 | Security Concern: Person Allegedly Carrying Firearm Near Vehicles. Email to management with request for safety measures. Nighttime video still preserved. | **Reported** |
| Aug 2025 | Reported Rodent Infestation During Annual Inspection. Raised infestation concerns with Janelle and Tate during official unit inspection — establishing management notice well before later citations. | **Notice Given** |
| 08/19-25/2025 | Kitchen Sink Leak / Odor / Staining Documented. Reddish-brown staining under sink, pooled liquid, no response follow-up. Storage-unit door removal without notice. Parking shortage and vehicle damage documented. | **No Response** |
| Aug-Sep 2025 | Annual Recertification Initiated. CHA initiated annual reexamination. Required documents submitted. Reasonable accommodation requested verbally and in writing. CHA issued shifting, inconsistent documentation requirements without clear written guidance. | **Deficiency Dispute** |
| 09/11/2025 | Formal Documentation: Habitability Violations and Breach of Quiet Enjoyment. Comprehensive documentation covering kitchen demolition disruption, improperly installed sink, ongoing leaking, rust-colored fluid from drain, fallen light fixtures, back door installation issues, brick sanding releasing dust, locked backyard door removed without notice, construction site conditions, parking damage, work van/child near-miss incident, dresser drawers obstruction. | **Formal Notice** |
| 09/17/2025 | Supervisor Terminates Compliance Call. Supervisor terminated the call mid-sentence. No opportunity to complete compliance process. | **Due Process Issue** |
| 09/29/2025 | Sherman Law Attorney Consultation Scheduled. Stacey Brown (Sherman Law) emailed asking to meet attorney Ben Sherman the following day. | **Attorney Contact** |
| ~09/30/2025 | Attorney Consultation — Ben Sherman (Sherman Law). Met with attorney; presented all CHA recertification paperwork. Attorney Sherman reviewed documentation and stated "you were good." One week before October 6, 2025 informal hearing. | **Attorney Reviewed** |
| 10/06/2025 | Informal Hearing Held (Second). Experienced neurological shutdown due to disability; unable to fully present documentation. No reasonable accommodation offered or provided. | **No Accommodation** |
| 10/07-20/2025 | Post-Hearing Documents Submitted. Pay stubs, bank statements, financial records, and tax documentation submitted in good faith. | **Submitted** |
| 10/20/2025 | Termination Upheld at Hearing. Termination upheld despite post-hearing document submission. No written explanation of remaining deficiencies provided. | **Upheld** |
| 10/31/2025 | HCV Assistance Officially Terminated. Assistance terminated effective this date for failure to complete annual reexamination. | **TERMINATED** |

| Nov 2025 | City Inspection and Habitability Concerns Documented. Following rehabilitation work (permit ended October 2025), city inspection and habitability concerns documented. | Evidence Filed |
|---|---|---|
| 12/12/2025 | Wyoming Notice of Lease Violation Issued. | Adverse Action |

## PART 3 — JANUARY 2026: RE-APPLICATION, ELIGIBILITY REVERSAL, AND EVICTION RISK

| Date | Event / Description | Outcome / Status |
|---|---|---|
| 01/02/2026 | Intent to Renew Submitted to Landlord. Timely submitted Intent to Renew. No response received from Seldin Company / Pershing Pointe. | No Response |
| 01/02/2026 | Selected from HCV Waiting List. CHA issued "Get Ready Now to Start Receiving Housing Assistance" notice; January 17 documentation deadline set. | Selected |
| 01/05/2026 | CHA Eligibility Letter Issued. CHA issued formal written eligibility letter requesting supporting documentation. Actively complying. | Eligibility Confirmed |
| 01/07/2026 | EIV Report Run — Eligibility Reversed. HCV Eligibility Team ran EIV report, discovered 10/31/2025 termination and 10/06/2025 uphold. Reversed eligibility based solely on prior termination — no new evidence, no hearing. Denial letter mailed. | DENIED — Reversal |
| 01/09/2026 | 3-Day Notice to Quit Issued by Landlord. Demanded full payment and threatened eviction. Issued while in active dispute. | Eviction Risk |
| 01/09/2026 | Confirmed Submission of All Items Requested. Confirmed submission of full four-page bank statement, sixty days of paystubs for Eva, and child support documentation. | Submitted |
| 01/09-12/2026 | Eligibility Team Email Exchanges. Team exchanged emails regarding application status. Denial notice emailed 01/12/2026. | Communication |
| 01/12/2026 | Informal Review Requested. Emailed CHA requesting Informal Review. Review scheduled for 01/16/2026. | Review Requested |
| 01/12/2026 | Emergency Motion Filed — Stay of Eviction. Filed pro se Emergency Motion to Stay Eviction and Compel Landlord Cooperation. Docket No. 2025-CV-0203882. Exhibits S, N, O, P, Q, R, T, U attached. | Filed — State Court |
| 01/15/2026 | CHA Response to Reasonable Accommodation Request. Cynthia Keseru acknowledged receipt of RA request. CHA requested clarification and disability verification before making a decision. | RA Pending |
| 01/16/2026 | Informal Review Held by Phone. Present: Cynthia Keseru (Hearing Officer), Michelle Wheeler (HCV Eligibility Specialist), Steve Tanner (Father/Advocate), Candace Tanner. | Review Held |
| 01/16/2026 | Landlord Reference Dispute at Review. Stated never told to bring references. Hearing Officer noted at least two prior emails stating this. | Extension |

| | | |
|---|---|---|
| | Extension granted to 01/23/2026 to submit references. | |
| 01/19/2026 | Observational Support Letter — Karen Miller. Volunteer Counselor/Support Provider, CRMC, submitted observational letter documenting periods of significant stress and emotional overwhelm. | **Support Letter** |
| 01/23/2026 | Landlord References Submitted. Reference from Janelle Balfour (Pershing Pointe/Seldin Co.): one late payment, one minor lease violation. Amber Martinez provided verification of on-time rent and clean workspace. | **Submitted** |

## PART 4 — FEBRUARY 2026: FORMAL LEGAL ACTIONS, HABITABILITY EVIDENCE, AND DECISIONS

| Date | Event / Description | Outcome / Status |
|---|---|---|
| 02/02/2026 | Letter to Keseru — Overdue Written Decision. Sent certified mail demanding written hearing decision per 24 C.F.R. § 982.555(e)(6). Hearing had occurred 01/16/2026; decision was promised by 01/23/2026 but not received. | **Demand** |
| 02/06/2026 | Informal Review Decision Issued. Hearing Officer Cynthia Keseru upheld CHA's denial of HCV eligibility. | **Denial Upheld** |
| Feb 2026 | Habitability Evidence — Red Dust and Rodent Contamination. Photographic evidence: red dust contamination inside refrigerator condenser fan, electrical outlets, and interior surfaces (construction origin). Dead mouse inside refrigerator mechanical compartment. Structural gaps allowing pest entry. | **Evidence** |
| 02/13/2026 | Formal Certified Mail Request — Reopen Eligibility. Cited good-faith compliance efforts, housing instability, financial hardship. Renewed RA request under Fair Housing Act, Section 504, and ADA. | **Formal Request** |
| 02/18/2026 | Formal Demand Letters Physically Mailed via USPS Certified Mail. Two certified mail packages sent from Cheyenne, WY 82001 to CHA, 3304 Sheridan St., Cheyenne, WY 82009. Tracking: 7021 1970 0000 5817 2833 and 7021 1970 0000 5817 2819. Grand Total Paid: $22.80. | **Mailed Certified** |
| 02/18/2026 | Reasonable Accommodation Clarification Filed. Specified accommodations needed: clear written communication on deadlines, single designated CHA staff contact, email as primary communication channel, mail simultaneously by email, phone participation for hearings. Disability basis: ADHD and PTSD/trauma-related conditions. | **RA Filed** |
| 02/25/2026 | Covenant of Quiet Enjoyment — Formal Notice to Seldin. Asserted breach of Covenant of Quiet Enjoyment and Wyoming Warranty of Habitability. Documented continuous unauthorized contractor access; stolen property (police report); dishwasher flooding kitchen since November; washing machine flood; black mold under sink covered rather than remediated; two weekends without heat; weekend without hot water; sewage odor; broken window boards 2+ years; compromised locks; | **Formal Notice** |

| | forced crawlspace access; eviction threat after requesting written notice. Demand for 24-hour advance notice. | |
|---|---|---|
| 02/26/2026 AM | Selective Parking Enforcement — Stickers Placed on Daughter's Vehicle. Two parking violation stickers placed on Eva Tanner's vehicle in unmarked area. No signage. Seven photos of other vehicles in identical location with no enforcement. | **Selective Enforcement** |
| 02/26/2026 PM | Windshield Obstruction — Management Refused to Remove Stickers — Police Report Filed. One sticker placed directly on driver's side windshield obstructing visibility. Management refused to remove. Police report filed. | **Police Report** |
| 02/26-28/2026 | Photographic Surveillance Log — Seven Vehicles Parked in Same Location Without Enforcement. White Jeep Grand Cherokee at multiple timestamps; dark pickup truck. All photos preserved with original timestamps. | **Evidence Preserved** |
| Feb 2026 | CHA Executive Director Greg Hancock Observed Near Residence. Photographed and observed near residence at 1931 Rainbow Road on multiple recent occasions. Black Toyota Camry XLE (plate 7267396) documented. | **Observed** |

## PART 5 — MARCH 2026: HUD COMPLAINT FILED AND ONGOING VIOLATIONS

| Date | Event / Description | Outcome / Status |
|---|---|---|
| 03/03/2026 | HUD FAIR HOUSING COMPLAINT FILED — FORM 903. Filed HUD Form 903 with U.S. Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity (FHEO) at 6:59 PM Mountain Time. Complaint alleges failure to provide RA at October 6, 2025 hearing (ADA Title II, Section 504, FHA); retaliation (42 U.S.C. § 3617); discriminatory application (42 U.S.C. § 3604(f)); HCV regulation violations (24 C.F.R. § 982.555). | **FILED — HUD** |
| 03/04/2026 | HUD FHEO Response Received — Interview Scheduled. Equal Opportunity Specialist Johnnie L. Harvey Jr. (Johnnie.L.Harvey@hud.gov) requested telephonic intake interview March 18, 2026 at 11:00 AM MST. HUD Inquiry No. 873217. | **Scheduled** |
| 03/04/2026 | Multiple Unresolved Habitability Violations — Formal Notice. Comprehensive notice covering rodent infestation (at least 9 mice documented); entry points through shared wall and dryer vent; 9 unresolved habitability violations including non-functional outside outlets, dryer vent wired at 110V instead of 220V, shower drain hole unfilled, dangling light fixtures, non-functional toilet, unreplaced outside light fixture, missing hot water heater access door, windows that won't stay up (over one year), missing screen doors. Property manager Mindy previously stated "mice are horrible this year." | **Formal Notice** |
| 03/04/2026 ~11AM | Unauthorized Contractor Access — Pete's Builders. Two contractors from Pete's Builders (1816 Central Avenue, Cheyenne) outside with | **No Notice** |

| | | |
|---|---|---|
| | ladders. No advance written notice. Contractors apologized for lack of notice. Direct violation of February 25, 2026 demand for 24-hour notice. | |
| 03/04/2026 | Neighbor's Dog Repeatedly Trespassing. Neighboring dog repeatedly entering yard and defecating on property. Reported to management. | **Ongoing** |
| 03/04/2026 | Second Mouse Found Inside Unit. Second dead mouse discovered on glue trap under refrigerator (ninth rodent documented overall). | **Active Infestation** |
| 03/04/2026 ~4:30PM | Glass Hazard and Screw Behind Vehicle — Possible Retaliation — Cameras Non-Functional. Pile of broken glass and a screw placed directly behind vehicle's tires. Neighbors who rarely come outside were watching when discovery occurred. Neighbor commented "don't you have your cameras?" Cameras and outside outlets were non-functional. ONE DAY after HUD complaint filed March 3, 2026. | **POSSIBLE RETALIATION** |
| Ongoing | PATTERN — Management Disclosing Private Information and Making Derogatory Mental Health Statements. Three separate tenants reported management disclosed personal information. One former tenant captured on video stating management told them Candace "was nuts" and "insane." Video evidence preserved. | **VIDEO EVIDENCE** |
| 03/07/2026 ~9PM | Unit 3-103 Incident — Object Thrown Near Vehicle — Verbal Confrontation. Camera captured child from Unit 3-103 throwing object toward parked vehicle. Adult female neighbor laughing. Neighbor referenced personal information that could only have come from management disclosure. Formal incident report filed same evening. | **Footage Preserved** |
| 03/14/2026 | BOTH FEBRUARY 18 CERTIFIED MAIL LETTERS TO CHA RETURNED UNDELIVERED — "NMK" / Return to Sender. Both envelopes stamped "NMK" (No Mail Known) and "Return to Sender — Unable to Forward." Tracking numbers 7021 1970 0000 5817 2833 and 7021 1970 0000 5817 2819. CHA address failed to receive certified mail. Original envelopes preserved. | **CRITICAL** |
| 03/18/2026 11:01AM | HUD Intake Interview Missed — Spam Filter / Calendar Error. Mr. Harvey called from blocked number; phone routed to voicemail by spam filter. Calendar showed 12 PM instead of 11 AM. Same-day email to Harvey requesting reschedule. | **Reschedule** |
| 03/20-23/2026 | Multiple Contact Attempts to Mr. Harvey. Outgoing calls to cell (202) 834-7184 and work (303) 672-5057. Multiple emails. Supplemental evidence package sent March 23 including strategic memorandum. | **Persistent Follow-Up** |
| 03/23/2026 5:29PM | URGENT Reschedule Request — Final Notice. Final reschedule request to Harvey. Stated if no response by March 26, would contact supervisor for reassignment. | **Escalation** |
| 03/23/2026 5:59PM | Written Complaint Submission to FHEO Webmanager. Emailed FHEO_Webmanager@hud.gov with comprehensive written complaint covering all four counts of Fair Housing Act violations. | **Filed** |
| 03/24/2026 | Mr. Harvey Responded — Rescheduled to March 25 at 10 AM MST. Harvey explained connectivity issues. Confirmed availability. | **Rescheduled** |