
FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2026 MAY 27 PM 2:56

MARGARET BOTKINS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

**CANDACE LEE TANNER,**
Plaintiff,

v.

**CHEYENNE HOUSING AUTHORITY;**
**PERSHING POINTE PRESERVATION LIMITED PARTNERSHIP;**
**PERSHING POINTE PRESERVATION GP LLC;**
**SELDIN COMPANY, LLC;**
**MENDEE COTTON,** in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing Pointe;
**JANELLE BALFOUR,** in her individual capacity and as agent/property manager for Seldin Company, LLC and Pershing Pointe II;
and **JOHN AND JANE DOES 1-10,**
Defendants.

Case No. 26-CV-171-KHR
Assigned by Clerk

# PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION RESTRAINING DEFENDANTS FROM PURSUING EVICTION ACTION BASED ON THE MAY 8, 2026 TWENTY-DAY NOTICE TO VACATE

Plaintiff Candace Lee Tanner, appearing **pro se**, respectfully moves under Federal Rule of Civil Procedure 65 for an emergency Temporary Restraining Order and Preliminary Injunction restraining Defendants Seldin Company, LLC; Pershing Pointe Preservation Limited Partnership; Pershing Pointe Preservation GP LLC; Mendee Cotton; Janelle Balfour; and all persons acting in active concert or participation with them who receive actual notice of the Court's Order, from initiating, filing, prosecuting, supporting, assisting, or relying upon any eviction, forcible entry and detainer action, lease-termination action, adverse landlord-reference action, adverse tenant-file action, or adverse housing-related action based on the May 8, 2026 Wyoming Twenty-Day Notice to Vacate.

Plaintiff seeks this relief to preserve the status quo until the Court can adjudicate Plaintiff's federal fair-housing, disability, retaliation, due-process, disputed Housing Choice Voucher termination, affordable-housing, and related state-law claims.

---

# I. INTRODUCTION

1. Plaintiff seeks emergency injunctive relief to prevent imminent and irreparable harm.
2. On May 8, 2026, Defendant Seldin Company, LLC, through Defendant Mendee Cotton, served Plaintiff with a Wyoming Twenty-Day Notice to Vacate.
3. The May 8, 2026 Notice does not identify any specific lease violation, incident date, factual basis, lease provision, witness, evidence, or supporting documentation.
4. The verification or proof-of-service portion of the Notice is unsigned or incomplete.
5. When Plaintiff asked Defendant Cotton what incident or alleged conduct the Notice was based on, Defendant Cotton refused to identify the basis and stated in substance that Wyoming law only requires "one lease violation" to evict a tenant.
6. Plaintiff alleges the May 8 Notice is vague, unsupported, selectively enforced, retaliatory, and inconsistent with federal fair-housing protections, disability-accommodation obligations, affordable-housing good-cause protections, and related state-law protections.
7. Plaintiff was a long-term Housing Choice Voucher participant through Defendant Cheyenne Housing Authority until her assistance was terminated in or around October 2025. Plaintiff disputes that termination as unlawful, procedurally defective, discriminatory, retaliatory, and contrary to federal housing requirements.
8. Plaintiff alleges the termination of housing assistance worsened her housing instability and increased her risk of eviction, displacement, and irreparable harm.
9. The May 8 Notice expires on or about May 28, 2026. Unless restrained, Defendants may attempt to file a forcible entry and detainer action or otherwise rely on the Notice to force Plaintiff from affordable housing before Plaintiff's federal claims can be heard.

10. Plaintiff is not asking this Court to stay an already-filed state-court eviction case. To Plaintiff's knowledge, no state eviction case based on the May 8, 2026 Notice is currently pending as of this filing.

11. Plaintiff seeks prospective relief restraining Defendants from using the May 8, 2026 Notice as the basis for eviction, lease termination, adverse housing action, adverse landlord reference, adverse tenant-file notation, or other housing-related harm.

12. The requested relief is narrow. Plaintiff does not ask the Court to excuse her from lawful lease obligations or prevent Defendants from complying with lawful housing duties. Plaintiff asks only that Defendants be restrained from relying on the May 8, 2026 Notice, which Plaintiff alleges is defective, retaliatory, unsupported, and part of a broader pattern of unlawful conduct.

## II. FACTUAL BACKGROUND

13. Plaintiff incorporates by reference the Verified Complaint and Declaration filed with this Motion.

14. Plaintiff is a former long-term Housing Choice Voucher participant whose assistance was terminated by CHA in or around October 2025.

15. Plaintiff disputes that termination as unlawful, procedurally defective, discriminatory, retaliatory, and contrary to federal housing requirements.

16. Plaintiff resided at Pershing Pointe Townhomes/Pershing Pointe II, a property Plaintiff alleges is connected to affordable-housing and Low Income Housing Tax Credit obligations.

17. Plaintiff has engaged in protected fair-housing and civil-rights activity, including requesting reasonable accommodation, reporting habitability conditions, reporting unsafe housing conditions, requesting equal enforcement of lease and community rules, requesting preservation of evidence, pursuing HUD/FHEO Inquiry No. 873217, filing or preparing a HUD housing-discrimination complaint, and filing prior legal action related to housing-assistance and tenancy issues.

18. Plaintiff alleges Defendants responded to protected activity with escalating adverse actions, including parking enforcement, lease violations, animal-control-related enforcement, police involvement, trespass-related allegations, refusal to clarify common-area access, and the May 8, 2026 Twenty-Day Notice to Vacate.

19. On or about April 24, 2026, Defendants issued a lease-violation notice concerning Plaintiff's backyard, fence, privacy barrier, alleged obstruction, or alleged fire-safety issue. Plaintiff disputes that notice and alleges comparable or more serious neighboring conditions were tolerated without similar enforcement.

20. On or about April 27, 2026, management and/or maintenance allegedly removed or dismantled Plaintiff's retractable privacy fence/barrier while Plaintiff disputed the alleged violation.
21. On April 29, 2026, Plaintiff continued documenting complaints regarding Unit 3-103, harassment, animal issues, common-area access, sanitation concerns, and selective enforcement.
22. On May 2, 2026, Animal Control issued citations against Plaintiff alleging dog-at-large and dog-feces concerns, despite Plaintiff's prior reports of other tenants' loose animals, dog trespass into Plaintiff's yard, and animal-related violations.
23. On May 8, 2026, Defendants served Plaintiff with the Twenty-Day Notice to Vacate.
24. The Notice does not identify the alleged factual basis for termination, the date of any alleged incident, the lease provision allegedly violated, any witness, or any evidence.
25. Plaintiff asked Defendant Cotton what the Notice was based on. Defendant Cotton refused to identify the basis and stated in substance that she could not discuss it with Plaintiff.
26. Defendant Cotton further stated in substance that Wyoming law only requires "one lease violation" to evict a tenant.
27. On May 9, 2026, Plaintiff documented a police interaction involving Cheyenne Police Officer LaPorta, badge P69, believed to relate to Cheyenne Police Department Incident No. 26-25237. Plaintiff alleges the officer entered or remained at Plaintiff's doorway after Plaintiff asked him to leave, obstructed her ability to close her door, and threatened citation if she closed the door.
28. On or about May 11, 2026, a criminal trespass warning was issued barring Plaintiff from Unit 3-103 premises for eighteen months. Plaintiff disputes the factual and legal basis for the warning and alleges it was part of the same escalating pattern.
29. On or about May 14 to May 15, 2026, Plaintiff discovered evidence that her home had been accessed without authorization and that items had been stolen, moved, damaged, or disturbed.
30. On or about May 15 and May 20, 2026, Plaintiff began relocating belongings under duress because she no longer felt safe in her home.
31. Plaintiff alleges she feared for her safety, her minor daughter's safety, and the safety of her dog Cortez.
32. On May 22, 2026, at approximately 1:33 PM, Cheyenne Police Department officers responded to the property in connection with a trespass-related complaint by a neighboring resident. The incident was documented under Cheyenne Police Department Incident No. 26-27660.
33. Plaintiff was provided a business card identifying Officer Taraski, P87, but Plaintiff's video and photographs appear to show uniform nameplates reading "Federer" and "Fakler." Plaintiff also documented that an officer identified as P98 was present.

34. Plaintiff has requested public records, body-worn camera footage, dash-camera footage, CAD/dispatch logs, incident reports, officer identification, attempted citation records, and related records concerning that incident.
35. Plaintiff alleges the continuing police contacts, trespass allegations, refusal to clarify common-area access, and eviction pressure show that the risk of further harm is immediate and ongoing.
36. Plaintiff alleges Defendants are using the vague May 8 Notice as a retaliatory and pretextual mechanism to remove Plaintiff from the property before her civil-rights, fair-housing, disability-related, and housing-assistance claims can be adjudicated.

# III. RULE 65 NOTICE CERTIFICATION

37. Plaintiff is proceeding **pro se** and certifies the following regarding notice.
38. Plaintiff files this Motion on an emergency basis because the May 8, 2026 Twenty-Day Notice expires on or about May 28, 2026, and Defendants may attempt to initiate eviction proceedings immediately thereafter.
39. Plaintiff has repeatedly placed Defendants and property management on written notice of her disputes, fair-housing activity, repair complaints, safety concerns, preservation demands, and objections to the May 8, 2026 Notice.
40. Plaintiff will serve Defendants with the Verified Complaint, this Motion, supporting Declaration, proposed Order, and related filings as directed by the Clerk and the Court.
41. To the extent the Court determines that notice to Defendants is required before temporary relief can issue, Plaintiff respectfully requests the earliest possible emergency hearing before expiration of the May 8, 2026 Notice or before any eviction action is filed.
42. Plaintiff requests temporary relief without delay because the Verified Complaint and Declaration set forth specific facts showing that immediate and irreparable injury may occur before Defendants can be heard in the ordinary course. This harm includes eviction filing, forced displacement, loss of affordable housing stability, interference with restoration of housing assistance, safety harms, tenant-screening harm, and continuing retaliation.

# IV. LEGAL STANDARD

43. Federal Rule of Civil Procedure 65 authorizes temporary restraining orders and preliminary injunctions.
44. A movant seeking temporary or preliminary injunctive relief must show:

a. a substantial likelihood of success on the merits;
b. irreparable harm in the absence of injunctive relief;
c. that the balance of equities favors the movant; and
d. that the injunction is in the public interest.

45. Plaintiff satisfies each factor.

---

# V. ARGUMENT

## A. Plaintiff Is Substantially Likely to Succeed on the Merits.

46. Plaintiff is substantially likely to succeed on several independent and overlapping claims.
47. Plaintiff engaged in protected fair-housing activity by requesting accommodation, reporting habitability and safety conditions, filing or pursuing HUD/FHEO matters, preserving evidence, disputing selective enforcement, and pursuing legal claims.
48. The May 8, 2026 Notice followed closely after Plaintiff's protected activity, including her April 2026 written complaints, HUD/FHEO activity, and disputes regarding lease violations and selective enforcement.
49. Plaintiff alleges Defendants issued the May 8 Notice to punish, intimidate, interfere with, or deter Plaintiff from continuing protected activity.
50. The temporal proximity, refusal to identify the basis for termination, history of disputed violations, and evidence of selective enforcement support an inference of retaliation under 42 U.S.C. § 3617.
51. Plaintiff alleges the May 8 Notice does not specify any incident, date, lease provision, witness, evidence, or factual basis.
52. A notice that does not identify the alleged conduct, date, lease provision, evidence, or witness does not provide Plaintiff a meaningful opportunity to understand, contest, cure, defend against, or seek accommodation regarding the alleged basis for termination.
53. Defendant Cotton's refusal to identify the basis of the Notice confirms that the Notice did not provide meaningful specification.
54. Plaintiff alleges Pershing Pointe/Pershing Pointe II is subject to affordable-housing good-cause protections.
55. A termination notice that identifies no specific conduct, no facts, and no evidence does not demonstrate good cause.
56. Plaintiff has documented multiple comparator issues involving neighboring units, including parking issues, loose animals, dog trespass, animal-waste concerns, common-area obstruction, patio/fire-safety concerns, harassment, unauthorized-occupant concerns, and possible accessible-parking placard misuse.

57. Plaintiff alleges Defendants tolerated comparable or more serious conduct by neighboring tenants while escalating enforcement against Plaintiff and her daughter.

58. The combination of vague notice, refusal to identify the basis, selective enforcement, and timing after protected activity supports Plaintiff's claim that the May 8 Notice is pretextual.

59. Plaintiff alleges Defendants knew or should have known of Plaintiff's disability-related needs, requests for accommodation, and need for fair consideration before adverse housing action.

60. Plaintiff alleges Defendants failed to engage in a meaningful interactive process, failed to provide reasonable accommodation, and escalated eviction pressure instead.

61. Plaintiff is likely to succeed on her claims, at minimum as to the need for immediate preservation of the status quo while the Court reviews the merits.

## B. Plaintiff Will Suffer Irreparable Harm Without Emergency Relief.

62. Plaintiff faces imminent risk of eviction proceedings, housing loss, displacement, loss of affordable housing stability, interference with the ability to restore housing assistance, tenant-screening harm, and further retaliation.

63. The May 8 Notice expires on or about May 28, 2026.

64. Once an eviction action is filed, Plaintiff will face emergency litigation in state court, reputational harm, tenant-screening harm, risk to future housing assistance, and pressure to surrender rights before this Court can adjudicate her federal claims.

65. Plaintiff has already begun relocating belongings under duress because of safety concerns, alleged unauthorized access, property damage, police involvement, and fear for her household.

66. Plaintiff alleges she is afraid to sleep in her home, afraid to leave her daughter or dog in the home, and afraid that additional citations, complaints, or enforcement actions will be used to force her out.

67. Money damages alone cannot fully remedy the loss of housing stability, safety, dignity, fair-housing rights, and civil-rights protections.

68. Plaintiff has shown immediate and irreparable harm.

## C. The Balance of Equities Favors Plaintiff.

69. Plaintiff faces loss of housing, forced displacement, loss of affordable housing stability, safety harms, emotional distress, and interference with federal civil-rights claims.

70. Defendants, by contrast, would be required only to maintain the status quo and refrain from relying on the May 8, 2026 Notice while the Court reviews Plaintiff's claims.

71. Plaintiff's requested relief is narrow and does not prevent Defendants from complying with lawful housing obligations or from seeking appropriate relief based on lawful, specific, non-retaliatory grounds after providing legally sufficient notice.

72. The balance of equities favors Plaintiff.

## D. The Public Interest Supports Injunctive Relief.

73. The public interest favors enforcement of federal fair-housing laws, anti-retaliation protections, disability-accommodation obligations, affordable-housing protections, and lawful eviction procedures.

74. The public interest also favors preventing vague, retaliatory, or selectively enforced notices from being used to remove tenants before their federal claims can be heard.

75. Preserving the status quo until the Court can conduct an orderly review serves the public interest.

# VI. SECURITY UNDER RULE 65(c)

76. Plaintiff is proceeding **pro se** and is submitting an Application to Proceed in District Court Without Prepaying Fees or Costs.

77. Plaintiff lacks the financial ability to post a substantial bond.

78. Plaintiff respectfully requests that the Court waive security or set a nominal bond of $1.00 because the requested relief is narrow, preserves the status quo, causes no monetary prejudice beyond delay, and is necessary to protect affordable housing stability and civil-rights claims.

# VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

a. Granting a Temporary Restraining Order effective immediately;

b. Restraining Defendants Seldin Company, LLC; Pershing Pointe Preservation Limited Partnership; Pershing Pointe Preservation GP LLC; Mendee Cotton; Janelle Balfour; and all persons acting in active concert or participation with them who receive actual notice of the Order, from initiating, filing, prosecuting, supporting, assisting, or relying upon any eviction,

forcible entry and detainer action, lease-termination action, adverse housing-reference action, adverse tenant-file action, or adverse housing-related action based on the May 8, 2026 Wyoming Twenty-Day Notice to Vacate;

c. Restraining Defendants from using the May 8, 2026 Notice as evidence of good cause, lease default, tenant misconduct, nonrenewal justification, adverse landlord reference, housing-assistance termination support, or tenant-file justification while this matter is pending;

d. Ordering Defendants to preserve all records related to Plaintiff's tenancy, lease enforcement, complaints, maintenance, access logs, key/lock records, work orders, contractor access, police communications, Animal Control communications, parking enforcement, animal complaints, comparator-unit enforcement, photographs, video footage, internal communications, tenant-file notes, and the May 8, 2026 Notice;

e. Scheduling a hearing on Plaintiff's request for preliminary injunction at the earliest possible time under Rule 65;

f. Following hearing, entering a Preliminary Injunction continuing the restraints pending adjudication on the merits;

g. Waiving the Rule 65(c) security requirement or setting nominal security of $1.00; and

h. Granting such further relief as the Court finds just and proper.

Plaintiff respectfully requests emergency consideration because the May 8, 2026 Twenty-Day Notice expires on or about May 28, 2026, and Defendants may attempt to initiate eviction proceedings immediately thereafter.

DATED this 27th day of May, 2026.

Respectfully submitted,

**Candace Lee Tanner**
Plaintiff, Pro Se
1931 Rainbow Road, Unit #102
Cheyenne, Wyoming 82001-8529

---

**Tanner v. Cheyenne Housing Authority**
Motion for Temporary Restraining Order and Preliminary Injunction
United States District Court for the District of Wyoming