

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2026 MAY 27 PM 2: 57
MARGARET BOTKINS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

CANDACE LEE TANNER,
Plaintiff,

v.

CHEYENNE HOUSING AUTHORITY;
PERSHING POINTE PRESERVATION LIMITED PARTNERSHIP;
PERSHING POINTE PRESERVATION GP LLC;
SELDIN COMPANY, LLC;
MENDEE COTTON, in her individual capacity and as agent/property manager for Seldin
Company, LLC and Pershing Pointe;
JANELLE BALFOUR, in her individual capacity and as agent/property manager for
Seldin Company, LLC and Pershing Pointe II;
and JOHN AND JANE DOES 1–10,
Defendants.

Case No. 26-CV-171-KHR
Assigned by Clerk

# DECLARATION OF CANDACE LEE TANNER IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Candace Lee Tanner, declare under penalty of perjury under the laws of the United States of
America, pursuant to 28 U.S.C. § 1746, as follows:

# I. PERSONAL BACKGROUND AND HOUSING STATUS

1. I am the Plaintiff in this action. I make this Declaration based on my own personal knowledge, except where stated on information and belief. As to matters stated on information and belief, I believe them to be true. If called to testify, I could and would testify competently to the facts stated in this Declaration.
2. I am a single mother. My household includes my minor daughter, age 17.
3. I reside, or resided during the events described, at 1931 Rainbow Road, Unit #102, Cheyenne, Wyoming 82001-8529. I have lived at this property for approximately ten years.
4. My housing at Pershing Pointe/Pershing Pointe II has been the housing stability I relied on to raise my daughter, maintain my household, operate my small business, care for my dog Cortez, and remain connected to my community.
5. I was a long-term participant in the federal Housing Choice Voucher program administered by the Cheyenne Housing Authority for approximately nine years.
6. I am not currently receiving housing assistance because CHA terminated my assistance in or around October 2025.
7. I dispute the termination of my housing assistance as unlawful, procedurally defective, discriminatory, retaliatory, and contrary to federal housing requirements.
8. The termination of my housing assistance has caused serious housing instability for me and my daughter. It has made it harder for me to maintain housing, defend against eviction pressure, obtain replacement housing, and protect my household from displacement.
9. I seek restoration or reinstatement of housing assistance, fair process, reasonable accommodation, and related relief in this case.
10. I understand Pershing Pointe/Pershing Pointe II to be connected to affordable-housing requirements, including Low Income Housing Tax Credit "LIHTC" obligations. My lease documents include affordable-housing provisions and good-cause-related protections.

---

# II. PROTECTED ACTIVITY AND PRIOR PROCEEDINGS

11. I have engaged in protected fair-housing and civil-rights activity. This includes requesting reasonable accommodation, disputing adverse housing actions, reporting unsafe and uninhabitable conditions, documenting selective enforcement, requesting equal enforcement of lease and community rules, requesting preservation of evidence, and pursuing HUD/FHEO matters.
12. I filed HUD/FHEO Inquiry No. 873217, which remains active and has been assigned to Equal Opportunity Specialist Johnnie L. Harvey Jr. with FHEO Region VIII in Denver.

13. I previously filed Civil Action No. 2025-CV-0203882 in the First Judicial District Court of Laramie County, Wyoming. That matter was dismissed without prejudice on May 13, 2026 under W.R.C.P. 4(w) for failure to obtain timely service of summons.
14. I am now bringing this federal action to protect my federal fair-housing, disability, retaliation, due-process, disputed housing-assistance termination, affordable-housing, and related rights.
15. I have submitted many written complaints to property management regarding habitability conditions, rodent issues, unauthorized or improper access, contractor access, security-camera issues, harassment by neighboring residents, animal issues, parking issues, common-area access, and selective enforcement.

---

## III. MAY 8, 2026 TWENTY-DAY NOTICE TO VACATE

16. On May 8, 2026, Defendant Seldin Company, LLC, through Property Manager Mendee Cotton, served me with a Wyoming Twenty-Day Notice to Vacate.
17. The May 8, 2026 Notice did not identify any specific alleged incident, date, lease provision, witness, evidence, or factual basis.
18. The verification or proof-of-service portion of the Notice was unsigned or incomplete.
19. On May 8, 2026, I went to the property-management office and asked Defendant Mendee Cotton what the Twenty-Day Notice was based on.
20. Defendant Cotton refused to tell me what specific incident or alleged conduct the Notice was based on.
21. Defendant Cotton told me in substance that she could not discuss the incident with me.
22. Defendant Cotton also stated in substance that Wyoming law only requires "one lease violation" to evict a tenant.
23. Without knowing the alleged basis for the Notice, I cannot meaningfully dispute it, request a reasonable accommodation, correct or cure any alleged issue, preserve specific evidence, identify witnesses, or defend myself.
24. I believe the May 8, 2026 Notice was issued in retaliation for my protected fair-housing activity, HUD/FHEO activity, prior legal action, repair complaints, safety complaints, and selective-enforcement complaints.
25. The Notice came after months of written complaints and protected activity, including my April 2026 complaints regarding Unit 3-103, habitability conditions, harassment, animal issues, parking issues, and selective enforcement.

---

# IV. SELECTIVE ENFORCEMENT AND COMPARATOR CONCERNS

26. I have documented a pattern of selective enforcement at the property.
27. I reported that neighboring units, including Units 3-101, 3-103, and 3-104, have had comparable or more serious lease and community-rule issues without similar enforcement.
28. I reported concerns involving loose animals, dog trespass into my yard, animal-waste concerns, sanitation concerns, blocked or narrowed common areas, patio and backyard clutter, parking issues, possible unauthorized occupants, harassment, profanity, property interference, and possible accessible-parking placard misuse.
29. I reported that Unit 3-104 has multiple vehicles and that one vehicle displayed a Wyoming accessible parking placard.
30. A person associated with Unit 3-104 verbally told me that she allowed her non-disabled daughter to use the accessible parking placard so the daughter would have a safe parking space.
31. I have documented a neighboring patio with a Blackstone-style outdoor grill and propane tank located near the brick exterior wall and exterior A/C unit.
32. I have documented that management issued notices and enforcement against me and my daughter while tolerating similar or more serious conduct by other tenants.
33. On or about April 24, 2026, I received a disputed lease-violation notice concerning my backyard, fence, privacy barrier, alleged obstruction, or alleged fire-safety issue.
34. I dispute that notice because my backyard setup had existed openly for years, had passed inspections, and was comparable to or less serious than conditions tolerated at other units.
35. On or about April 27, 2026, management and/or maintenance came to my backyard with a drill and removed or dismantled my retractable privacy fence/barrier while I was disputing the notice.

---

# V. ESCALATION AFTER THE MAY 8 NOTICE

36. Since the May 8, 2026 Twenty-Day Notice, the situation has escalated.
37. On May 2, 2026, Animal Control issued citations against me alleging dog-at-large and dog-feces issues. These citations occurred despite my prior reports of other tenants' loose animals, dog trespass into my yard, and animal-related violations.
38. On May 9, 2026, a Cheyenne Police officer came to my home. I understand this interaction to involve Officer LaPorta, badge P69, and Cheyenne Police Department Incident No. 26-25237.

39. During the May 9, 2026 police interaction, the officer entered or came into my home or doorway area even though I was afraid and did not want him inside.
40. I told the officer to leave or get out of my house.
41. The officer remained in my doorway and prevented me from closing my front door.
42. I was afraid, and I called 911 while the officer was still present.
43. The officer threatened me with a citation if I closed the door.
44. This interaction contributed to my fear of police contact and fear of being unsafe in my own home.
45. On May 11, 2026, a criminal trespass warning was issued purporting to bar me from Unit 3-103 premises for eighteen months. I declined to sign it and dispute the factual and legal basis for that warning.
46. My understanding is that the trespass warning arose in the context of ongoing complaints and conflict involving Unit 3-103, despite my prior reports about Unit 3-103's dog, harassment, property interference, and other issues.

---

# VI. COMMON-AREA ACCESS AND TRESPASS ALLEGATIONS

47. I have been accused of trespassing in rear areas of the property that I understood to be common access, authorized access, or necessary access for trash, moving, retrieval of property, and documenting my own dryer vent.
48. A neighbor associated with Unit 3-103 repeatedly called police on me alleging trespass.
49. One incident involved cardboard blowing into or near the rear area, and I went to retrieve it.
50. Another incident involved me walking through the rear gravel/common area to take out trash.
51. I asked officers whether they had checked with property management before warning or citing me for trespass. They said they had not.
52. I went to property management and requested clarification because I did not want to be cited for using a common or authorized access route.
53. Property management clarified in substance that the area was not trespassing or was common/access property, but management refused to provide that clarification to me in writing.
54. Management's refusal to put common-area access in writing left me exposed to repeated police calls, trespass allegations, and citation threats while I was trying to move, take out trash, and access areas necessary to my home.

---

# VII. UNAUTHORIZED ACCESS, SECURITY CONCERNS, AND FORCED RELOCATION

55. On or about May 14 to May 15, 2026, I discovered evidence that my home had been accessed without my authorization and that items had been stolen, moved, disturbed, or damaged.
56. I also experienced ongoing issues with cameras going offline, cameras being unplugged or disabled, and important incidents not being captured.
57. I have been afraid that unknown persons had access to my home, my backyard, or my belongings.
58. I have been afraid to sleep in my home.
59. I have been afraid to leave my daughter in the home.
60. I have been afraid to leave my dog Cortez in the home.
61. I have been afraid to leave the home unattended.
62. I incurred veterinary expenses for Cortez after health concerns that I believe were connected to the unsafe environment, including concerns about possible poisoning, rodent exposure, spraying, or contamination.
63. On or about May 15 and May 20, 2026, I packed and moved belongings under safety duress with help from family who traveled from out of town.
64. I did not want to be forced from my home this way. I began moving because I no longer felt safe and because I believed management was not protecting my household or correcting the conditions I had reported.

---

# VIII. MAY 22, 2026 POLICE CONTACT

65. On May 22, 2026, Cheyenne Police Department officers responded again to the property at approximately 1:33 PM.
66. I understand this interaction to be connected to Cheyenne Police Department Incident No. 26-27660.
67. During or after the May 22, 2026 incident, I was provided a business card identifying Officer Taraski, badge/ID P87, with Incident No. 26-27660 written on it.
68. However, when I reviewed my own video and photographs from the incident, one officer's visible uniform nameplate appeared to read "FEDERER," and another officer's visible nameplate appeared to read "FAKLER."
69. I also documented that an officer identified as P98 was present.
70. The mismatch between the business card provided and the name visible on the uniform concerned me.

71. I have requested public records from the Cheyenne Police Department, including body-worn camera footage, dash-camera footage, CAD/dispatch logs, incident reports, attempted citation records, officer names, badge numbers, and clarification of all officers present.

---

# IX. IRREPARABLE HARM

72. If Defendants are permitted to file or pursue a Forcible Entry and Detainer action against me based on the May 8, 2026 Twenty-Day Notice, I face immediate and irreparable harm.
73. The May 8, 2026 Notice expires on or about May 28, 2026.
74. If an eviction action is filed, I face the risk of losing my home, damaging my tenant record, losing future housing opportunities, disrupting my daughter's stability, interfering with my ability to restore housing assistance, and worsening the trauma and fear my household is already experiencing.
75. I do not have stable replacement housing that provides the same security, affordability, and housing-assistance-related stability.
76. Replacement housing in Cheyenne that is affordable, safe, available, and compatible with my housing needs is extremely difficult to find.
77. An eviction filing or eviction record would follow me through tenant-screening reports and make future rental approval extremely difficult.
78. My daughter's stability, schooling, emotional health, and sense of safety have already been affected.
79. My small business income has already been disrupted by the housing emergency, packing, moving, police contacts, safety concerns, and inability to work normally.
80. I have continued to perform my lease obligations, including rent obligations.
81. I documented my May 4, 2026 rent payment by placing it in the office payment slot and requesting written confirmation.
82. I am not asking the Court to excuse me from lawful lease obligations.
83. I am asking the Court to stop Defendants from using the vague, unsupported, retaliatory, and selectively enforced May 8, 2026 Twenty-Day Notice to force me out before my federal claims can be heard.
84. I respectfully request that the Court enter a Temporary Restraining Order and Preliminary Injunction restraining Defendants from filing, pursuing, supporting, or relying on any eviction or adverse housing action based on the May 8, 2026 Twenty-Day Notice.
85. I also request that the Court order preservation of records, including tenant files, maintenance records, access logs, key and lock records, work orders, contractor records, complaint records, parking records, animal complaints, police communications, Animal

Control communications, internal communications, photographs, video footage, and records regarding comparator units.

86. I make this Declaration because without emergency relief, I believe my daughter and I will continue to suffer irreparable harm before the Court has an opportunity to decide whether Defendants' conduct was lawful.

---

# X. DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 27 day of May, 2026, at Cheyenne, Laramie County, Wyoming.

---

**Candace Lee Tanner**
Plaintiff, Pro Se
1931 Rainbow Road, Unit #102
Cheyenne, Wyoming 82001-8529

---

**Tanner v. Cheyenne Housing Authority**
Declaration of Candace Lee Tanner in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction
United States District Court for the District of Wyoming